OPINION OF THE COURT
Guy A. Graves, J.
The defendant, Power Authority of the State of New York, hereinafter referred to as the "authority”, has moved for a dismissal of the first cause of action on the ground that plaintiffs failed to state a cause of action. The attorneys for plaintiffs and the authority agree that as to the first cause of *745 action, the authority’s motion should be treated as a motion for summary judgment. (CPLR 3211, subd [a], par 7; subd [c].)
The defendant authority had also moved for other relief concerning the second and fifth causes of action; however, on the return date, counsel concurred that the same should be held pending a decision in Matter of Simonds v Power Auth. of State of N. Y. by the Appellate Division, Third Dpartment. That case between plaintiffs similarly situated to those in the instant case and the defendant authority, involves essentially the same issues raised in the plaintiffs’ pleadings.
The plaintiffs are all landowners through whose lands the route of the Fort Covington-Massena-Marcy 765kV transmission line, presently being built by the authority, passes. The defendant authority is a corporate municipal instrumentality of the State of New York, having been established by chapter 772 of the Laws of 1931, as amended, presently title 1 of article 5 of the Public Authorities Law.
On July 11, 1973, the board of trustees of the authority adopted a resolution which read:
"resolved, That the Authority hereby determines pursuant to the power vested in it by section 1005 of the Power Authority Act that there is a need for transmission facilities consisting of (i) a single circuit 765kV transmission line between a point on the international boundary between the United States and Canada approximately two miles east of Fort Covington, New York (or such other point as may be approved by the Federal Power Commission) and a substation to be constructed near Massena, New York, and (ii) a single circuit 765kV transmission line between said Massena substation and a 765kV substation to be constructed in the Town of Marcy, New York, adjacent to or near the Edic substation of Niagara Mohawk Power Corporation, and (iii) two 230 kV transmission lines connecting such 765kV lines with the Authority’s St. Lawrence project in order to permit the exchange of power between the Hydro-Electric Commission of Quebec and the Authority and to interconnect the Authority’s St. Lawrence and Niagara projects; and be it further
"resolved, that the General Manager is hereby authorized to apply to the Federal Power Commission and the International Boundary Commission for approval of such portions of such transmission facilities as are located at the borders of the United States and to the Public Service Commission for a Certificate of Environmental Compatibility and Public Need of *746 such facilities pursuant to Article VII of the Public Service Law, and to take all such further action and to make such other applications to Governmental Agencies, both Federal and State as may be necessary or desirable to effectuate the purpose and intent to the foregoing resolution.”
In August, 1973, the authority applied to the Public Service Commission, State of New York, for a certificate of environmental compatibility and public need for the transmission facilities described in the resolution. On February 6, 1976, and June 30, 1976, the Public Service Commission issued to the authority a so-called partial certificate of environmental compatibility and public need for the undertaking of certain phases of construction on certain segments of the proposed transmission lines. The New York State Department of Transportation and the authority acquired easements from the plaintiffs and others along the proposed route of the 765kV transmission line in the name of the People of the State of New York, and for use by the authority, and the authority commenced construction along the route of the line, and construction operations continue to date.
The affidavits submitted on this motion appear to raise no issue of fact concerning the above allegations contained in the first cause of action of plaintiffs’ complaint.
The plaintiffs’ first cause of action further alleges that a controversy exists between the plaintiffs and the defendant authority concerning the right of the authority to construct the said transmission line pursuant to the resolution referred to dated July 11, 1973. The plaintiffs, in effect, allege that the defendant authority had no authority to construct transmission facilities not related "to authority-owned generating stations”. The plaintiffs contend that the principal purpose of the transmission lines is to import electricity generated at facilities (Hydro-Electric Commission of Quebec, Canada) not owned by the authority. The first cause of action further alleges that at the time the trustees of the authority adopted the resolution, they had no authority to construct transmission lines not related to authority-owned generating stations, and that the authority is, therefore, operating in excess of its statutory authority, thereby depriving the plaintiffs of their property without due process of law, in violation of their rights under the Fourteenth Amendment of the Constitution of the United States, and section 6 of article I of the New York State Constitution.
*747 The primary question raised by the pleadings and affidavits submitted is whether the Power Authority of the State of New York, on July 11, 1973, had the statutory authority to adopt the resolution authorizing the construction of the 765kV transmission line to import electricity from Canada, and to interconnect two of its generating plants. A secondary question is, whether if such authority did not exist at that time were those acts ratified subsequently by enactment of amendatory legislation on May 17, 1974, and subsequent resolutions affirming said project?
The court is mindful that a pleading challenged for legal insufficiency should be construed liberally as to give it every fair intendment possible. However, the court does not assume the truth of any legal conclusions drawn by the pleader or the pleader’s sole interpretation of any statutes that may be involved.
The plaintiffs do not contest or dispute the authority’s right to interconnect its own St. Lawrence and Niagara projects with a 765kV line. The plaintiffs, however, do contest the authority’s right to import power from Canada, and to construct transmission lines in reference to such importation.
In the instant case, the authority and Hydro-Quebec, a Canadian utility company, entered into an agreement, which, among other matters, provides for the importation of power from Quebec during the summer months when there are substantial demands in New York State for power, and the potential exportation of power to Quebec in the winter when Quebec’s power demands are at a peak and New York’s demands are below peak. The plaintiffs, by way of affidavit and memoranda of law, do not deny the above, but contend that the primary purpose is the importation of power. It is the authority’s position that the agreement between the authority and Hydro-Quebec is for the purpose of assisting in maintaining an adequate supply of electric power for the State, since the 765kV line would provide to the St. Lawrence project a connection previously inaccessible to the New York State power grid, thus giving it a direct connection with the southeastern portion of New York State.
The declaration of policy (Public Authorities Law, § 1001) and powers and duties of the authority (§ 1005) set forth the scope of the agency’s power. The plaintiffs’ basic position is that the power of the authority is a limited and restricted one and that unless the authority is specifically authorized to *748 undertake the construction of a project, it has no authority to do so.
An examination of the declaration of policy provisions (§ 1001) and powers and duties (§ 1005) reveals a grant by the State to the authority of broad powers to accomplish the purposes of the act. The policy provisions primarily relate to the development of the resources of the Niagara and St. Lawrence Rivers in co-operation with the proper Canadian authorities and those of the United States. The development of these resources included matters related to navigation, commerce and power. The second paragraph of section 1001 of the Public Authorities Law provides:
"It is further declared that the need for obtaining and maintaining a continuous and adequate supply of dependable electric power and energy is a matter of public concern to the people of the state; that the maximum capacity of the hydroelectric developments on the Niagara and Saint Lawrence rivers of the authority can be best utilized and additional public benefit derived therefrom by provision for supplemental base load nuclear generating facilities and that for the purposes (i) of so utilizing such capacity and of deriving such additional benefit, (ii) of providing additional low cost power and energy to attract and expand high load factor industry, (iii) of continuing an adequate supply of power and energy for the future needs of its municipal electric systems and rural electric cooperative customers, and (iv) of assisting in the development of additional dependable hydroelectric power from other waters of the state and in the development of advanced facilities having substantial prospects of reducing electricity production costs, the public interest requires that the authority participate in the generation of supplemental electric power and energy by pumped storage hydroelectric and nuclear means to the extent authorized in this title.” (L 1939, ch 870; amd L 1951, ch 146, § 1; L 1968, ch 294, § 1, eff May 21, 1968.)
It is obvious that the declaration of policy must be read in conjunction with section 1005, which sets forth the powers and duties of the authority. Subdivision 7 of section 1005 as amended, effective May 21, 1968 (L 1968, ch 294), authorizes the authority to erect transmission lines for the purpose of (declaration of policy) benefiting the people of the State of New York by the most efficient development and operation of hydroelectric resources.
*749 "7. To proceed with the physical construction of any project authorized by this title, including the erection of the necessary dams, power houses and other facilities, instrumentalities and things necessary or convenient to that end, and including also the erection of such transmission lines as may be necessary to conduct electricity to industrial users located at or near the site; and including also the acquisition, by contract only with the owners thereof, of transmission lines or the use of such transmission lines, available or which may be made available, to conduct electricity to such point or points at which the electricity is sold by the authority to any person, corporation or association, public or private, engaged in the business of distribution and sale of electricity to ultimate consumers or if the authority is unable to so acquire by contract the ownership or use of such transmission lines, including also the erection by the authority of transmission lines necessary for such purposes; and thereafter to maintain and operate the project in accordance with the provisions and policy of this title. The authority is specifically authorized to undertake the construction of any project in one or more steps as it may find economically desirable or advantageous, and as it may agree with the appropriate Canadian and/or United States authorities. Whenever in this title reference is made to 'project’, it shall be understood to refer to such part of any project authorized by this title as may from time to time be in existence or immediately projected.”
Subdivision 8 of section 1005 further supplements the power of the authority by providing:
"To cooperate with and, when the trustees deem it feasible and advisable, to enter into contractual arrangements with utility companies * * *
"b. With respect to construction * * * and/or operation of baseload generating facilities * * * and disposition of the output of such facilities.
"c. With respect to construction * * * operation and/or use of transmission facilities.” (L 1968, ch 294, § 3, eff May 21, 1968.)
Section 1005 is replete with the grants of power to the authority to contract with and co-operate with Canadian authorities to effectuate the development and enhancement of hydroelectric power and projects related thereto. (§1005, first unnumbered par; subds 2, 3.)
*750 Subdivision 6 provides for a means and method by which the integrity of its existing system and projects can be maintained and enhanced. It provides: "6. To develop, maintain, manage and operate its projects other than the Niagara and Saint Lawrence hydroelectric projects so as (i) to provide an adequate supply of energy for optimum utilization of its hydroelectric projects, (ii) to attract and expand high load factor industry, (iii) to provide for the additional needs of its municipal electric and rural electric cooperative customers and (iv) to assist in maintaining an adequate, dependable electric power supply for the state.” (L 1968, ch 294, § 3, eff May 24, 1968.)
The first unnumbered paragraph of section 1007 provides in part: "If, for any of the purposes hereunder, including temporary construction purposes and the making of additions or improvements, the authority shall find it necessary or convenient for it to acquire any real property as herein defined, whether for immediate or future use, then the authority may find and determine that such property is required for a public use, and upon such due determination, such property shall be and shall be deemed to be required for such public use until otherwise determined by the authority”.
Section 1007 further provides that real property shall be acquired in the name of the State and that the authority shall have the right to possess and use it for its corporate purposes.
It appears further that the power authority by its action determined a need not only to link the St. Lawrence and Niagara energy resources but also to link these resources to a State-wide system called the New York State power grid. The authority, in adopting its resolution of July 11, 1973, authorized the construction of a 765kV line that interconnected the authority’s St. Lawrence and Niagara Projects and would also provide for transmission of hydro-power from Canada. This action was in conformance with a legislative policy declaration "that the need for obtaining and maintaining a continuous and adequate supply of dependable electric power and energy is a matter of public concern to the people of the state” (§ 1001, second unnumbered par; L 1968, ch 294).
Subdivision 11 of section 1005 further mandates the authority: "To exercise all powers necessary or convenient to carry out and effectuate the purposes and provisions of this title”.
In addition to the above statutory powers, the authority has a broad delegation of powers concerning acquisition of prop *751 erty for public use "whether for immediate or future use” so long as it is determined to be reasonable "for the construction or operation of any project authorized by this title including transmission facilities” (§ 1007).
The court is cognizant that the authority’s power is not unlimited and that it only has powers that have been delegated by the State Legislature. (See Cuglar v Power Auth. of State of N. Y., 4 Misc 2d 879, affd 4 AD2d 801.) The late Judge Paul D. Graves, in a very comprehensive opinion concerning the power of appropriation of the authority, observed (Cuglar, 4 Misc 2d 879, 893, supra): "While it is true the 'Declaration of policy’ (§ 1001) does not spell out or refer to each and every power, and implied power, which the trustees may exercise, yet it cannot be said the scope, immensity or effects of this development, both in the International Rapids section and the heartlands as well, were totally unforeseen. To assert all consequences were clearly kept in mind at the time this act was approved, and that broad powers were thus deliberately withheld, is to argue for a proposition which has little historical basis in fact. On the contrary, it seems more reasonable to determine the results of the development were to be so far-reaching that it was neither feasible nor practicable to attempt a grant of powers except in broadest terms.”
The history and the purposes of the authority must be borne in mind in determining the legislative intent. The authority, by statute, is performing a governmental purpose primarily for the benefit of the people of the State. The authority is not subject to payment of taxes within the State and is presently tax exempt from Federal taxes.
The claim by the plaintiffs that the primary purpose of the line from Canada is for importation and resale of power to private utilities, and that consequently there was no relationship to the purposes of the authority in that said transmission facilities were not related to authority generating stations is not tenable. The transmission line here serves multiple purposes. There is a future arrangement for the exchange of power, as well as in high and low peak demand periods. Subdivision 6 of section 1005 of the act mandates the authority to "operate its projects other than the Niagara and Saint Lawrence hydroelectric projects” so as to operate its facilities at their highest possible efficiency as well as "maintaining an adequate, dependable electric power supply for the state.” The Legislature was concerned with not only the State’s present *752 needs, but also with a means by which such power can be maintained in the future to the benefit of the people of the State of New York.
The court finds that the authority had the power on July 11, 1973, to authorize the construction of the transmission facilities in issue.
If any question existed as to this authority, it was subsequently remedied by the State Legislature when the third unnumbered paragraph of section 1005 of the act was added, effective May 17, 1974, which states in part: "is further authorized to construct and/or acquire and complete such base load generating, transmission and related facilities as it deems necessary or desirable to assist in maintaining an adequate and dependable supply of electricity by supplying power and energy for the metropolitan transportation authority, its subsidiary corporations, the New York city transit authority, the port authority of New York and New Jersey, the city of New York, the state of New York, the United States, other public corporations and electric corporations within the metropolitan area of the city of New York within the state of New York” (emphasis supplied).
The record presented shows that the first right of way was authorized by resolution of the authority on July 22, 1975, over a year after the amendment of May 17, 1974.
Each time the authority acquired property rights of way necessary for the construction of the transmission line, beginning with the resolution of July 22, 1975, it had reaffirmed its July 11, 1973 resolution by specifically finding, "such real property is required for public use * * * that such real property is reasonably necessary for the construction and operation of the Massena-Marcy 765kV transmission line.” (See City of Albany v McMorran, 16 AD2d 1021, where the court determined that a later dated legislative statute constituted sufficient authority for the Superintendent of Public Works to consummate prior appropriations based on an earlier statute that would not have provided a basis upon which to make the appropriation.)
The court here has dealt solely with the power of the authority to construct the transmission line in question. Questions as to whether it acted in good faith or whether the appropriation was so irrational and baseless and in complete disregard of the public necessity for its use, are not presented upon this motion. (See Kaskel v Impellitteri, 306 NY 73; *753 Pauchogue Land Corp. v Long Is. State Park Comm., 243 NY 15.)
The defendant authority’s motion for summary judgment on the first cause of action is accordingly granted without costs.
The motion for a dismissal of the complaint against the defendants, New York State Department of Transportation, Commissioner of the New York State Department of Transportation and Director of Real Property Revision, New York State Department of Transportation, on the grounds that they are not necessary parties, is at this time denied, without prejudice, pending a decision in Matter of Simonds v Power Auth. of State of New York by the Appellate Division, Third Department.